RACHEL L. GINSBURG EL AL. v. THE CUTLER & SAVIDGE
LUMBER COMPANY.

85    439
128    138

*Sale — Title — Delivery — Question for jury — Assumpsit — Common
counts.*

Plaintiffs bought and paid for two logging railroads with knowledge
of a prior *verbal* arrangement made by their vendor with the
defendant for the sale to it of a portion of the rails, which
were to be taken up from the road-bed; but nothing had been
paid on account of such proposed purchase, nor had any of the
rails been taken up or delivered. After such purchase plaintiffs
shipped six car-loads of rails to the defendant under an
alleged arrangement made with it by correspondence and by
wire, which rails defendant refused to pay for, claiming to
have received them under the arrangement made with
plaintiffs' vendor; whereupon plaintiffs brought an action of
*assumpsit* for the value of the rails, and recovered a judgment,
in affirming which the Court hold:

   *a*—That the title to none of the rails passed to the defendant
under said *verbal* arrangement.

   *b*—That the title to *all* of the rails passed to the plaintiffs
under the bill of sale executed to them.

   *c*—That the evidence shows the delivery to defendant by the
plaintiffs of the six car-loads of rails.

   *d*—That the title and possession being in plaintiffs, and they
having delivered the rails to defendant, on its refusal to return
or pay for the property the plaintiffs could maintain *assumpsit*
for its value, which recovery could be had under the common
counts.

   *e*—That the court very properly left the whole transaction
between the parties to the jury to construe, and instructed
them that the plaintiffs had the burden of showing their
ownership and the delivery of the rails, which delivery must
have been made under such circumstances as would make out
a contract of sale and delivery.

Error to Wayne. (Brevoort, J.)   Argued February 3,
1891.   Decided May 8, 1891.

*Assumpsit.* Defendant brings error. Affirmed. The facts are stated in the opinion.

*George W. Radford,* for appellant.

*Conely, Maybury & Lucking,* for plaintiffs.

LONG, J. July 3; 1889, William Steele was the owner of a certain piece of logging railroad at Wyman, this State. On that date he made and executed an agreement to sell and convey the same to the plaintiffs, for the sum of $16,000. The sale included all the iron and steel rails, bolts, etc., together with logging cars and other property. Three thousand dollars was paid down at that date, and on the 10th the balance, $13,000, was paid, and the bill of sale executed and delivered to the plaintiffs for all such property. What was known as the "Ionia Road" was also purchased by the plaintiffs, for the sum of $2,000, from Mr. Steele, on July 24, 1889, and a bill of sale given. At the time of the purchase of the two roads the rails of both were then laid upon the road-beds. A 90-day note was given by the plaintiffs to Mr. Steele on the purchase of the Ionia road, and afterwards paid.

It appears that before this purchase Mr. Steele had arranged with the defendant, the Cutler & Savidge Lumber Company of Spring Lake, Mich., through Mr. Dwight Cutler, to sell to it 100 tons of these rails, to be taken up from the road-beds, but nothing had been paid on the purchase, and no agreement in writing made. At the time of the sale and transfer by Mr. Steele to the plaintiffs of these roads it appears that the plaintiffs were advised of the arrangement with Mr. Cutler. After the purchase by the plaintiffs, they shipped to the defendant six car-loads of rails,—about 100 tons. Demand was thereafter made upon the defendant for payment, which

was refused, the defendant claiming that it received the rails under the arrangement made with Mr. Steele before plaintiffs purchased, and that the amount and value thereof was applied upon an indebtedness owing by Mr. Steele to Dwight Cutler at and before the time the arrangement was made with Mr. Steele.

This action is in *assumpsit* to recover the value of the rails. On the trial in the Wayne circuit court the plaint- iffs had verdict and judgment for the value of the rails, —$2,178. Defendant brings error. The testimony and exhibits cover about 100 pages of printed record. On the trial, certain letters and telegrams passing between the parties were introduced in evidence, to which reference will be made.

The plaintiffs' claim is that they wrote the defendant on July 5, after the arrangement to purchase from Mr. Steele, that they had purchased, or made an agreement to purchase, the logging road of Mr. Steele, and that they understood from him that the defendant wanted 100 tons of 30-pound steel rails, fish-plates, and spikes, at $25 a gross ton, free on board cars at Wyman, and that, if they did want them, they should let the plaintiffs know, and they would ship them immediately. They got no reply to this letter. The defendant denied ever receiving it. The letter was not produced, and plaintiffs, after due notice, gave parol evidence of its contents. The matter ran on until July 19, when plaintiffs wired defendant from Detroit, where plaintiffs reside and carry on busi- ness, as follows:

"When do you want 100 tons steel rails, sold you by Steele, shipped? Answer quick.
                            "R. L. GINSBURG & SONS."

This telegram was answered on the 20th by the defend- ant as follows:

"Want the rails at once.
                        "CUTLER & SAVIDGE LUMBER CO."

On the same day the plaintiffs wired defendant:

"Steele not at home; have no particulars. Mail us order and shipping directions. Will ship immediately.
                        "R. L. GINSBURG & SONS."

Plaintiffs also wrote defendant the following letter on July 20:

"MESSRS. CUTLER & SAVIDGE LUMBER CO.,
                        "Spring Lake, Michigan.
"*Gentlemen:* When we made the purchase of William Steele of all his lumber road, he told us that he promised you to let you have 100 tons of 30-lb. steel rails at $25 gross ton, free on board cars, Wyman, fish-plates and spikes included. Mr. Steele is absent from home now, and we are going to ship some of the rails away. We deemed it our duty to find out from you if you want the rails, so we telegraphed you, and we received your reply, 'Want the rails at once;' and in reply we asked you to let us know by return of mail how many tons you wanted, and where shall we ship them, and if you want any of your men to be present. If you would have answered our first letter you would have had the rails long ago, as we completed our purchase on the 10th, and all paid for on that date. Hope to receive an immediate answer, and we will attend to it promptly. Wells, Stone & Co. bought of us 200 tons also.
                        "Respectfully yours,
                        "R. L. GINSBURG & SONS."

Defendant claims that on July 22 following the receipt of this letter and telegram it wired plaintiffs as follows:

"We bought rails from Steele, and have written him.
                        "C. & S. L. CO."

This telegram was offered and received in evidence, and will be referred to hereafter as "Exhibit Q."

The plaintiffs claim that they never received this telegram.

Plaintiffs claim that after these letters and telegrams,

and between the 7th and 10th of August, they shipped two car-loads of rails to the defendant; that, before shipping the other four car-loads, on the 15th of August they wired the defendant: "Must have immediate answer by wire, whether you want balance of rails or not; otherwise will sell to another party,"—and on the same day received from defendant the following reply by wire: "Have left the matter with M. L. Steele, Ionia;" that before shipping the other four car-loads Mr. Samuel Ginsburg, representing the firm of R. L. Ginsburg & Sons, went to Grand Haven on August 22, and saw Mr. Dwight Cutler, of the Cutler & Savidge Lumber Company, and who had the controlling interest in the concern; that Mr. Cutler then told Samuel Ginsburg that he had not seen the two car-loads of rails which had been shipped, but he understood they were at Le Roy, and that, as soon as the balance was shipped, he would go over and see them, and if they were not good he would return them, and, if they were, as soon as the shipment was complete he would remit for them; that at this time he showed Mr. Cutler the bills of sale received from Mr. Steele on the purchase of the rails; that after this conversation he gave orders for the other four cars to be shipped, and they were shipped on the 24th of August, and invoices were sent on August 15 for the first two cars, and August 30 for the last four. These shipping bills were as follows:

"DETROIT, MICH., August 15, 1889.
"CUTLER & SAVIDGE LUMBER CO., Spring Lake, Mich.:
"Bought of R. L. GINSBURG & SONS, wholesale dealers in scrap iron and metals, 207 and 209 Atwater street, between Antoine and Hastings:
"30 lb. steel rails; car No. 2,426, 43,000.; car 877, 37,000 lbs.; total, 80,000; at $25 a gross ton, $892.85."

"DETROIT, MICH., August 30, 1889.
"CUTLER & SAVIDGE LUMBER CO., Spring Lake, Mich.,

"Bought of R. L. Ginsburg & Sons, wholesale dealers in scrap iron and metals, 207 to 211 Atwater street:

"Detroit, Lansing & Northern, Nos. 465, 69, 379, and 419, 180,080 lbs. rails, spikes, and plates, $25 a gross ton, $1,206.25.

"Shipped from Wyman to your order, Le Roy, Mich."

These invoices were returned to the plaintiffs by the defendant on September 13, 1889.

Plaintiffs claim that on September 9, 1889, and after all the rails had been shipped, Samuel Ginsburg again saw Mr. Dwight Cutler at Grand Haven. They had in the meantime, and on September 3, made draft on the defendant for the amount of all the rails shipped. This draft had been returned to them unpaid. When he met Mr. Cutler on the 9th he asked him why he did not pay the draft, when he said he did not owe the money to the plaintiffs; that he made the purchase of William Steele, and he would not pay to the plaintiffs. The defendant claimed that the purchase was made from William Steele, and that the shipments were made by J. A. Steele for William Steele to it.

Mr. Cutler was called as a witness for the defendant, and testified that, in the May previous to the purchase by plaintiffs, he had arranged with William Steele for these rails; that nothing was paid down, but that Steele was owing him at that time $8,000, and he intended to apply it upon that. No writing was taken, but he made a memorandum of the agreement in his pass-book. Mr. Cutler denied the claim made by Samuel Ginsburg in his testimony, and testified that in the first talk with Ginsburg he told him he had bought the rails of Mr. Steele; that the telegram Exhibit Q. was sent by his direction.

Mr. Harbeck, the secretary of the defendant, was called as a witness, and testified that he sent the telegram Exhibit Q; that the telegram and letter of plaintiffs dated July 20 were sent by him to William Steele; that

they gave shipping directions to William Steele, and did not know the plaintiffs in the transaction; that they received the following letter from J. A. Steele:

"WYMAN, MICH., August 13, 1889.
"MESSRS. CUTLER & SAVIDGE LUMBER Co., Spring Lake,—

"*Gents:* I have shipped to your address from Ionia for William Steele two cars of rails in G. R. & I. flat-cars Nos. 877 and 2,426,—in car No. 2,426, 124 30-foot rails, 92 pair straps, one frog; in car No. 877, 95 30-foot rails, 25 24-foot rails, 3 22-foot rails, one frog, 168 pair straps. Can ship you some rails from Wyman after the track is taken up, which I expect will be in a week, if that will do. Please let me know at once to Ionia, as William will not be at home. An early reply will oblige,
"Yours truly,     J. A. STEELE.

"P. S. There is only about one-half car rails left in Ionia, so it is not worth while sending them, so if you want more we can send balance from here to make out what we agreed to send from Ionia.
"J. A. STEELE."

Defendant also offered in evidence the shipping bills for the six cars, but it is not claimed that Mr. Cutler or the officers of defendant company ever saw these shipping bills until about the time of the trial of the cause. The claim of the defendant is that it never received from the plaintiffs the rails in controversy, but that Mr. Cutler bought them for the defendant company from William Steele, and that they were shipped by J. A. Steele for William Steele to the defendant.

Forty errors are assigned. Many of them we do not deem it important to notice. The cause was tried before a jury, and their verdict settles some of the questions raised. Several errors are assigned upon the refusal of the court to give the several requests of the defendant's counsel. These requests are as follows:

"1. Under the pleadings in this case, the defendant is entitled to a verdict.

"2. Under the evidence in this case, the defendant is entitled to a verdict.

"3. The telegrams and letters which passed between the parties, being in writing, are for the court to construe; and I charge you that they do not make out any contract between the parties entitling the plaintiffs to a recovery in this case.

"4. Plaintiffs' telegram of July 19, as follows: 'When do you want 100 tons steel rails, sold you by Steele, shipped? Answer quick,'—clearly shows that plaintiffs knew that Wm. Steele had sold to defendant 100 tons of rails, and defendant's reply by telegram, after being pushed for an answer, on July 20, 'Want the rails at once,' only meant that defendant wanted the rails that it had purchased of Steele through Mr. Cutler.

"5. It appears from the evidence that plaintiffs' telegram of July 20, 'Steele not at home; have no particulars. Mail us order and shipping directions. Will ship immediately;' plaintiffs' letter of same date, in which their telegram of July 19 is confirmed, viz.: 'When do you want 100 tons steel rails, sold you by Steele, shipped? Answer quick;' and plaintiffs' telegram of July 22, 'Answer quick where you want rails shipped,'—were all received by defendant before sending the telegram of July 22, the receipt of which plaintiffs dispute, viz.: 'We bought rails from Steele, and have written him.' I therefore charge you that said telegrams and letter must be all construed together, and, no matter whether plaintiffs received defendant's telegram of July 22 or not, if you believe the testimony of Mr. Cutler as to the talks between him and Ginsburg, then plaintiffs cannot recover, as there is no other evidence that defendant knew otherwise than that the rails were shipped to defendant for Wm. Steele, as appears by the letter of J. A. Steele to defendant of August 13, 1889, and the shipping bills, signed 'James D. Story' and 'Wm. Steele.'

"6. If the jury believe from the evidence that plaintiffs or their agents received defendant's telegram of July 22, 'We bought rails from Steele, and have written him,' then plaintiffs cannot recover. And in determining this question you are to take into consideration the testimony of Harbeck, the secretary of defendant, who wrote and left the message at Spring Lake with the operator for transmission; the testimony of the operator, De Witt, who sent the message, and its receipt at the Detroit

office of the Postal Telegraph Co., and the testimony of the company's employés as to the manner in which the business is done in the office, and the evidence of payment for the message by plaintiffs.

" 7. If the jury believe from the evidence that William Steele was indebted to Mr. Cutler or the Cutler & Savidge Co., in May, 1889, and agreed with Mr. Cutler to let him have the rails in question, and that said rails were shipped to defendant by or on behalf of William Steele, as disclosed by the letter of J. A. Steele, then Mr. Cutler or the Cutler & Savidge Lumber Co. were the *bona fide* purchasers of said rails from William Steele, and the plaintiffs cannot recover.

" 8. The letter and telegrams from plaintiffs to defendant of July 19 and 20 are for the court to construe; and I charge you that, taken together, they constitute notice to the defendant that plaintiffs had knowledge that Steele had sold the rails to defendant, and therefore plaintiffs cannot recover.

" 9. The plaintiffs are bound to convince the jury by the clear preponderance of evidence that the rails in question were delivered by plaintiffs to defendant under such circumstances as would make out a contract of sale and delivery by plaintiffs to defendant at the price named in plaintiffs' bill of particulars, and in this connection the jury are not to consider any communication on the part of the plaintiffs claimed to have been received by telephone.

" 10. If the jury find from the evidence that on or about August 22, during the first interview between Mr. Cutler and Ginsburg at Grand Haven, Mr. Cutler in substance told Ginsburg that he had bought the rails from Steele, and had paid for them, and had nothing to do with him or his firm in connection therewith, then plaintiffs cannot recover.

" 11. I charge you that the telegram of August 15 from defendant to plaintiffs, that defendant had left the matter with M. L. Steele, cannot be construed as any order from defendant to plaintiffs for any part of the rails in question, or in any way sustaining plaintiffs' claim that defendant had in any way waived its purchase of the rails from Steele.

" 12. Plaintiffs' telegram of July 19, as follows: 'When do you want 100 tons steel rails, sold you by Steele, shipped?' taken in connection with the other telegrams

and letters from plaintiffs to defendant, estops plaintiffs from claiming that the rails subsequently received by defendant from Steele, and named in the shipping bills in evidence, signed 'William Steele' and 'James D. Story,' and referred to in the letter from J. A. Steele, dated August 13, were the property of plaintiffs, and therefore plaintiffs cannot recover in this action.

"13. Plaintiffs having given in evidence that they had made an arrangement with Steele to ship the rails for plaintiffs, and the only evidence of shipment by Steele being the shipping bills signed 'William Steele' and 'James D. Story,' and the letter of J. A. Steele, August 13, I charge you that said shipping bills and said letter of J. A. Steele show that the rails in question were shipped to the defendant for William Steele, in compliance with the alleged agreement by Steele between him and the defendant; and, there being no evidence that defendant had notice that they had appointed Steele their agent to ship the goods for plaintiffs, therefore plaintiffs cannot recover.

"14. The chattel mortgages given by Steele to Cutler have no bearing on the issue to be determined by the jury, and are not to be considered by them."

The court charged the jury as follows:

"As I said before, the telegrams and letters which passed between the parties are in writing, and I leave you to construe them. The plaintiffs' telegram of July 19 reads as follows: 'When do you want 100 tons steel rails, sold you by Steele, shipped? Answer quick.' Does that show that plaintiffs knew that William Steele had sold to the defendant 100 tons of rails? And defendant's reply by telegraph, on July 20, 'Want rails at once,'—does that mean that defendant wanted the rails that it had purchased of Steele through Cutler?

"It appears from the evidence that plaintiffs' telegram of July 20: 'Steele not at home; have no particulars. Mail us order and shipping directions. Will ship immediately;' plaintiffs' letter of same date, in which their telegram of July 19 is confirmed: 'When do you want 100 tons steel rails, sold you by Steele, shipped? Answer quick;' and plaintiffs' telegram to defendant, 'Answer quick when you want rails shipped,'—all were received by defendant before sending the telegram of July 22, the receipt of which plaintiffs dispute, that is, 'We bought

rails from Steele, and have written him.' If you find from the evidence that on or about August 22, during the first interview between Mr. Cutler and Mr. Ginsburg at Grand Haven, Mr. Cutler in substance told Mr. Ginsburg that he had bought the rails from Steele, and had paid for them, and had nothing to do with him or his firm in connection therewith, the plaintiffs cannot recover, for there is no other evidence that defendant knew otherwise than that the rails were shipped to defendant for William Steele, as appears by letter of August 13 of J. A. Steele, and the shipping bills, signed 'James D. Story, for William Steele.'

"If you believe from the evidence that plaintiffs or their agents received defendant's telegram of July 22, 'We bought rails from Steele, and have written him,'— then plaintiffs cannot recover. And in determining this question you are to take into consideration the testimony of Harbeck, the secretary of the defendant, who wrote and left the message at Spring Lake with the operator for transmission; the testimony of the operator who sent the message, and the receipt at the Detroit office of the Postal Telegraph Co., and the testimony of that company's employés as to the manner in which they do business, and the evidence of payment for the message by plaintiffs.

"If you believe from the evidence that William Steele was indebted to Mr. Cutler or the Cutler & Savidge Lumber Co. in May, 1889, and agreed with Mr. Cutler to let him have the rails in question, and that said rails were shipped to defendant by or on behalf of William Steele, as disclosed by the letter of J. H. Steele, then Mr. Cutler or the Cutler & Savidge Lumber Co. were the *bona fide* purchasers of said rails from William Steele, and the plaintiffs cannot recover.

"The plaintiffs are bound to convince the jury by a clear preponderance of evidence that the rails in question were delivered by plaintiffs to defendant under such circumstances as would make out a contract of sale and delivery from plaintiffs to defendant at the dates named in plaintiffs' bill of particulars.

"You are not to consider any communication on the part of plaintiffs claimed to have been received by telephone; that is to say, gentlemen, you cannot consider any communication claimed to have been received by

85 MICH.—29.

telephone, unless you are satisfied that such is the fact; that there was a communication by plaintiffs; and that from the evidence you are satisfied that when Mr. Ginsburg telephoned, Mr. Cutler, or somebody who had authority to receive this message, was at the other end of the telephone.

"I charge you that the telegram of August 15, from defendant to plaintiffs, that defendant had left the matter with M. L. Steele, cannot be construed as an order from defendant to plaintiffs for any particular rails in question, or in any way sustaining plaintiffs' claim that defendant had in any way waived the purchase of the rails from Steele.

"Under all the circumstances, if you believe from all the evidence that Steele's brother or brother-in-law shipped these rails for him, William Steele, to Cutler, plaintiffs cannot recover; but if from all the evidence you do believe that they did ship the rails for plaintiffs, and not for William Steele, then your verdict will be for the plaintiffs."

The court had in the former portion of its charge read to the jury all the letters and telegrams passing between the parties. In another portion of the charge, not set out here, the court also properly stated to the jury the effect of the talk between Samuel Ginsburg and Mr. Cutler at Grand Haven. The charge covered all the material questions involved in the case, and there was no error in refusing the requests.

It was not error to leave to the jury the question as to what the arrangement and understanding between the parties was. It rested partly in the letters and telegrams, and partly in the talk had between Mr. Cutler and Samuel Ginsburg at Grand Haven.

There are certain questions raised in the record which we think were fully settled by the testimony, and upon which there should not have been any contention on the trial.

1. The title to none of these rails passed to the defend-

ant under the arrangement made between Mr. Cutler and William Steele in May, 1889. Nothing was paid on them, but Mr. Cutler expected when he received them to apply their value upon the indebtedness owing by William Steele to him. No delivery was made of any part of them.

2. Plaintiffs bought from William Steele and paid for the whole of the rails on July 10, 1889, and the title at once became vested in the plaintiffs to the whole property under the bill of sale given on the purchase.

3. The evidence shows, we think, conclusively, that the delivery was made of these six car-loads to the defendant by the plaintiffs. The mere fact that J. A. Steele made the shipment, and wrote that the shipment was made for William Steele, did not change the fact that the shipment was made by and under the direction of the plaintiffs, and the delivery was made by the plaintiffs.

4. The title to the property being in the plaintiffs, and they having possession and control of it, and having shipped it and delivered it to defendant, if they had a right of action they could maintain *assumpsit* for its value, and such recovery could be had under the common counts. It was property in the hands of defendant, which it refused to return or pay for. The defendant could not keep the property, and apply it upon the debt of Steele to Mr. Cutler.

5. The court very properly left the whole transaction between the parties to the jury to construe, and the charge was as fair to the defendant as the circumstances surrounding the case warranted. The defendant's theory of the case was fully and fairly submitted to the jury, and they were advised by the court that if Steele was indebted to Cutler in May, and agreed to let him have the rails, and the rails were shipped to defendant by or

on behalf of William Steele, then defendant was the *bona fide* purchaser of the rails from Steele, and plaintiffs could not recover. And again, they were told that if Cutler told Samuel Ginsburg, at the first interview at Grand Haven, that he had bought the rails from Steele and paid for them, plaintiffs could not recover; and again, that if the plaintiffs received the defendant's telegram of July 22, then the plaintiffs could not recover.

The charge of the court also put the entire burden of proof upon the plaintiffs to show the delivery by them and their ownership of the rails, and directed that they could not recover under such circumstances unless the delivery was under such circumstances as would make out a contract of sale and delivery. If either party had a right to complain of this charge it was the plaintiffs, and not the defendant. We find nothing in the refusal of the court to give defendant's requests to charge, or in the charge as given, of which the defendant can complain, and there is no error in that part of the case. Some specific errors are alleged. We have examined them, and do not deem them of sufficient importance to discuss.

It appears plainly that plaintiffs were the owners of the rails, and the jury have found under proper instructions that the delivery was under such circumstances as to make out a contract of sale and delivery. The plaintiffs being the owners, the defendant could not take the rails, under such circumstances, and hold them without paying the price named in the correspondence.

The judgment must be affirmed, with costs.

The other Justices concurred.